Filed 8/5/14  P. v. Brown CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION 1

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ANDREW THOMAS BROWN,<br><br>        Defendant and Appellant. | A139499<br><br>(San Mateo County<br>Super. Ct. No. SC077982) |

### INTRODUCTION

A jury convicted defendant Andrew Thomas Brown of two counts of second degree robbery (Pen. Code, § 212.5, subd. (c));[1] two counts of assault with a deadly weapon (§ 245, subd. (a)); second degree burglary (§ 460, subd. (b)); and petty theft with priors (§ 666).  On appeal, defendant contends the trial court prejudicially erred in admitting evidence of three prior theft convictions not only for impeachment, but also to show intent to steal, and giving corresponding jury instructions allowing such use of the priors.  The Attorney General concedes error in admitting two of the prior convictions for the purpose of proving intent, but maintains any error was harmless.  We agree, and affirm the judgment.

### BACKGROUND

On the evening of March 30, 2013, Freddie Persons and Omari Logan were working as loss prevention officers at a Safeway supermarket in Daly City.  They wore plain clothes and carried concealed badges.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

1

According to prosecution witnesses, defendant entered the Safeway at 8:14 p.m. and pushed his cart to the frozen meat section. Persons testified he and Logan were alerted by the store manager that defendant was stuffing frozen meat into his overalls, and Persons, approaching defendant to investigate, witnessed him stuffing one last steak into his clothes.

Under store policy, Persons and Logan had to wait until defendant left the store before they could confront him. A surveillance video showed defendant exiting the store at 8:19 p.m. with a bulge under his chest. Persons and Logan followed defendant to a nearby parking lot, identified themselves as Safeway store security, and displayed their badges. Defendant, when he testified, admitted Persons identified himself, but denied that he displayed a badge. Accordingly, defendant claimed he thought the loss prevention officers were "young thugs" who intended to rob him. Persons told defendant he had to return to the store, and if he had stolen more than $100 worth of merchandise, they would have to call the police. According to Persons, defendant responded, " 'Yeah, I know.' . . . " 'I know, I was hungry.' "

After showing reluctance and saying he did not want to go back to jail, defendant pulled two packages of meat from his overalls. Persons testified that when he bent down to retrieve the meat, defendant pulled out a knife and swung it at the two loss prevention officers.[2] Persons and Logan followed defendant as he walked away, but kept at a distance to avoid being cut by the knife. Persons then called 911 and can be heard on the 911 tape, played for the jury, describing the knife incident to the operator and later saying " 'Hold on, don't go too soon, I don't trust him, that knife, I'm not about to get stabbed.' " Defendant claimed he did not have a knife.

Daly City Police Officer Nicholas Ottoboni then arrived. Standing beside his police cruiser with his gun drawn, he ordered defendant to stop. Defendant was taken into custody and searched. No knife was found on him, nor was one found along his path, covering about a mile, from Safeway to the site of arrest. In a police interview

_____

[2] Logan thought the blade was a box cutter.

2

taken in the station, defendant said he had promised to provide food for an Easter party he was to attend the following day but had no money to buy the food. Defendant, during the interview, admitted, "I went in the Safeway and I stole some meat." He admitted the same thing at trial, saying "I went and stole some meat" and he had gone into the store for that specific purpose. The total value of the meat confiscated from defendant was between $160–$170.

The San Mateo District Attorney charged defendant with two counts of robbery, two counts of assault with a deadly weapon, one count of second degree burglary, and one count of petty theft with prior thefts.

Before trial, the prosecutor filed a motion in limine to introduce evidence of 11 prior convictions to impeach defendant, should he testify, and to show intent to steal. After a hearing, the court allowed three of the priors—for felony second degree burglaries in 1998 and 2005, and felony theft with priors in 2010—for both purposes.

At the close of evidence, the trial court instructed the jury, pursuant to CALCRIM No. 316,[3] it could consider the prior convictions in evaluating defendant's credibility. The court also instructed the jury, pursuant to CALCRIM No. 375,[4] it could consider the convictions in determining whether defendant had an intent, plan, or scheme to steal.

After less than a day of deliberations, the jury found defendant guilty of all charges. The trial court thereafter sentenced defendant to an aggregate term of four years in prison. Defendant filed a timely notice of appeal and challenges only his convictions for robbery and assault.

---

[3] The jury was instructed: "If you find that a witness has been convicted of a felony, you may consider that fact [only] in evaluating the credibility of the witness's testimony. . . . It is up to you to decide the weight of that fact and whether that fact makes the witness less believable." (CALCRIM No. 316.)

[4] The jury was instructed: "In evaluating this evidence, consider the similarity or lack of similarity between the uncharged [offenses] . . . and the charged offense[s]. [¶] Do not consider this evidence for any other purpose except for the limited purpose of [intent or plan or scheme to steal]."

DISCUSSION

Defendant does not dispute that the prior convictions were properly admitted for impeachment. Rather, his sole contention on appeal is that the trial court erroneously admitted the convictions as evidence of intent to steal under Evidence Code section 1101 and gave correlating instructions allowing the jury to consider the convictions for this purpose.[5] The Attorney General largely concedes error on the ground the priors were not sufficiently similar to the charged offenses.[6] Thus, the issue on appeal is whether the admission of the prior thefts to prove intent, and the correlating instruction, constituted prejudicial error, requiring reversal, or was harmless. (See *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*) [judgment reversed only when error is prejudicial].)

Even without consideration of the priors, the "direct and circumstantial evidence against [defendant regarding his intent or plan to steal and assault convictions] in this case was both virtually uncontradicted and overwhelming." (*People v. King* (2010) 183 Cal.App.4th 1281, 1303; see also *People v. Davis* (2009) 46 Cal.4th 539, 603; *People v. Foster* (2010) 50 Cal.4th 1301, 1335.) Defendant admitted to stealing the meat and to having that purpose when he entered the Safeway. He testified he wanted food for a picnic the following day, but did not have money to pay for it. He looked to see if anyone was watching while stuffing the steaks into his overalls and then walked out of the store without paying for them. In fact, he testified he knew it would be stealing if he left the store "threshold" with the meat in his overalls. The testimony of the loss

---

[5] "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as . . . intent . . .) other than his or her disposition to commit such an act." (Evid. Code, § 1101, subd. (b).)

[6] The Attorney General contends one of the priors, the 2010 theft conviction, was similar and therefore properly admitted on intent. As defendant testified at trial, he stole cans of Red Bull from a Safeway in Half Moon Bay. We agree this prior was properly admitted as to intent, but note the instruction allowed its use not only for intent, but also for plan and scheme to steal. In any case, there was no prejudice for the reasons we discuss above.

prevention officers also established defendant committed the crimes with which he was charged. Moreover, their testimony was corroborated by the 911 tape.

Accordingly, allowing evidence of the three prior theft convictions for purposes other than impeachment, and providing correlating jury instructions, was harmless, whether assessed under the *Watson* standard (*Watson*, *supra*, 46 Cal.2d at p. 836 [reversal required if it is reasonably probable defendant would have had a more favorable result absent the error]), or under the *Chapman* standard (*Chapman v. California* (1967) 386 U.S. 18, 24 [reversal required unless error is harmless beyond a reasonable doubt]). There, likewise, was no infringement of defendant's due process rights. (See *People v. Foster*, *supra*, 50 Cal.4th at p. 1335 [given overwhelming evidence regarding defendant's identity, "any error in the instruction's reference to the evidence as relevant to prove defendant's identity as the perpetrator would not constitute a violation of defendant's due process rights, because the instruction did not 'infect[] the entire trial.' "].)

## DISPOSITION

The judgment is affirmed.

_____
Banke, J.

We concur:

_____
Dondero, Acting P. J.

_____
Becton, J.*

---

* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

5